No. 7508.

STATE EX REL. ISIDORE NEWMAN VS. THE BOARD OF LIQUIDATION.

There is nothing in the constitution of 1879 which curtails or abolishes the duties and functions of the Funding Board as created by Act 3 of 1874, so far as those duties and functions relate to the issue of consolidated bonds in exchange for valid outstanding obligations of the State, of the description specified in that act, and the acts supplementary and amendatory thereof.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers,* J.

T. A. Flanagan for relator :

The intent and effect of the constitution of 1879 does not terminate the existence of the Funding Board created by Act 3 of 1874.

J. C. *Egan,* Attorney-General, and H. N. *Ogden,* Assistant Attorney-General, for defendant and appellant.

The opinion of the court on the application for mandamus was delivered by WHITE, J., on rehearing by SPENCER, J.

WHITE, J. The relator seeks by mandamus to compel the funding of certain warrants which were outstanding and fundable under the

provision of the Funding Act No. 3 of 1874. The lower court made the mandamus peremptory. The State thereupon averring its interest in the .matter, took a devolutive appeal. We have been favored with no brief,. or even oral suggestion of error in the judgment appealed from by the law officers of the State. We see no reason to disturb the judgment,. which is therefore affirmed.

### On Rehearing.

Spencer, J.   We were induced to grant a rehearing in this cause upon suggestion of the Attorney-General that at the time our decree was rendered affirming that of the court *a qua* the Funding Board had been abolished by effect and operation of the constitution of 1879.

In his brief on rehearing it is also suggested that plaintiff's suit was premature, in that he should have first obtained judgment on his warrants, and then have proceeded by mandamus. No such exception or defense was made below, and we have held that if not urged *in limine* it came too late. See State ex rel. Durant vs. Board of Liquidation, 29 An. 77.

The Funding Board was created by Act No. 3 of 1874. Its duties were, in substance, to examine into the outstanding debt of the State existing in the form of bonds and warrants issued prior to January,. 1874, and, if found valid, to fund them at sixty cents in seven-per-cent consolidated bonds. Provision was made by that act and others supplementary thereto for testing the validity of these debts before the courts.

Relator on 7th January, 1879, took this proceeding to compel the board to fund certain warrants issued prior to January, 1874. The board answered through the Attorney-General by a general denial. There was judgment February 1, 1879, declaring the warrants valid, etc., and ordering the board to fund them.

It also appears that the board acquiesced in this judgment, as it had a right to do, it not appearing that the warrants fell within the classes designated as doubtful by Act No. 11 of 1875. After the decree, the board executed the following receipt to Newman :

"New Orleans, March 19, 1879.

"Received in State obligations six thousand two hundred and forty- . seven 50-100 dollars, to be converted at sixty per cent.

"Signed                     ALLEN JUMEL, Auditor,

Ex-officio Secretary.

"Approved,

"Francis T. Nicholls, President."

On 15th April, 1879, the State by the Attorney-General took a de-

volutive appeal from the decree. On hearing we affirmed the judgment below.

The only question we now deem it necessary to notice is that stated, to wit, how far and to what extent have the existence and functions of the Funding Board been affected by the constitution of 1879? It is to be remarked that that board consists of State officers, the Governor, Lieutenant Governor, Auditor, etc., all of whom continue under the con-stitution of 1879, as under that of 1868.

There is not in the constitution of 1879 any direct provision refer-ring to this subject. It is absolutely silent so far as making any refer-ence to this board or its duties *eo nomine*.

Article 254 declares that the constitution of 1868 and all of its amendments are superseded by that of 1879. Article 1 of the ordinance on the State debt fixes the interest on the consolidated bonds of the State at two, three, and four per cent, and provides for stamping them to that effect, and grants the privilege to holders to exchange them at seventy-five cents for a four-per-cent bond. Other provisions restrict taxation to six mills. The ordinance relative to "relief of delinquent taxpayers" excludes from funding in the three-per-cent bonds therein provided for warrants *issued prior* to first January, 1874.

The argument of the Attorney-General is that the effect of these provisions is inconsistent with the functions of the Funding Board as fixed by Act No. 3 of 1874, and that therefore the board is abolished; that the board can only issue a *seven-per-cent* bond, whereas the con-stitution fixes the interest of consols at two, three, and four per cent.

We have seen that the funding act provides for funding only war-rants issued prior to its passage; and that the constitution of 1879 studiously excludes these warrants from the funding scheme it provides, limiting its operation to warrants issued after first January, 1874. Now is it not manifest that the only reason for thus excluding valid warrants issued prior to first January, 1874, was that they fell within the scope of the Funding Act No. 3 of 1874, and were fundable in consols? Any other view necessitates the conclusion that the convention intended *to repudiate* all valid and legal warrants issued prior to January 1, 1874! We are not disposed to adopt such a construction, so unjust, and so violative of fundamental principles. We are confirmed in our views that such was not the intention of the framers of the constitution by the following considerations: It was known to the convention that there were outstanding and unfunded good and valid obligations of the State, issued prior to first January, 1874, to the amount of nearly half a million (see Auditor's Report of 1880, p. 136), and there were no stronger reasons for repudiating these obligations than those of 1876. The convention evidently contemplated that these obligations would be

put into the form of consolidated bonds, and would then fall under the operation of the ordinance fixing and reducing the interest on such bonds. The constitution nowhere suspends the issue of consolidated bonds; it contents itself with reducing the interest thereon. We see no conflict between the constitution of 1879 and Act No. 3 of 1874, so far as relates to the issue of consolidated bonds. Both may exist together. Consolidated bonds may be issued in the form and manner prescribed by the latter, but when issued they fall under the operation of the debt ordinance of the constitution.

Article 258 of the constitution directs that "all rights, actions, prosecutions, claims, and contracts, as well of individuals as of bodies corporate, and all laws in force at the time of the adoption of this constitution, and not inconsistent therewith, shall continue as if said constitution had not been adopted."

We find, therefore, nothing in the constitution of 1879 which curtails or abolishes the duties and functions of the Funding Board, so far as those duties and functions relate to the issue of consolidated bonds in exchange for valid outstanding obligations of the State of the description specified in that act and the acts supplementary and amendatory thereof.

It is therefore ordered that our former decree remain undisturbed.